# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

RICHARD LOUIS DAVIS,
                    Appellant,

                    v.

OFFICE OF PERSONNEL
     MANAGEMENT,
                    Agency.

DOCKET NUMBER
AT-0843-16-0360-I-1

DATE: November 21, 2016

# THIS ORDER IS NONPRECEDENTIAL[1]

Richard Louis Davis, Huntsville, Alabama, pro se.

Sarah Murray, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## REMAND ORDER

¶1  The appellant has filed a petition for review of the initial decision, which affirmed the final decision by the Office of Personnel Management (OPM) denying his request for payment of a lump sum death benefit under the Federal Employees' Retirement System (FERS).  For the reasons discussed below, we

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant's brother (the decedent), a former Federal employee covered under FERS, passed away on January 28, 2013. Initial Appeal File (IAF), Tab 6 at 11, 33-36. On or about September 28, 2014, the appellant filed an application with OPM seeking payment of the decedent's lump sum death benefit. *Id.* at 7-10. In the application, the appellant indicated that he and his other living siblings were the decedent's only heirs. *Id.* at 9. According to a March 24, 2015 report of telephone contact written by an OPM employee, however, "[the appellant] stated that [the decedent] had a biological son but [the family does] not know where he is. They have tried to reach him, but they have been unsuccessful." *Id.* at 25. On June 11, 2015, OPM issued an initial decision finding the appellant ineligible to receive the decedent's lump sum death benefit because the decedent may have had a biological son who would be entitled to the benefit pursuant to the statutory order of precedence. *Id.* at 20. Thereafter, the appellant submitted affidavits attesting, among other things, that the decedent "never presented any child or children to our late mother during her lifetime nor did he acknowledge or present any child or children to any of us during [his] lifetime." *Id.* at 13, 15, 19. The appellant also attested that the decedent did not adopt his stepdaughters, L.S. and C.S. *Id.* at 13. In a January 27, 2016 final decision, OPM again found that the appellant was not eligible for a share of the decedent's lump sum death benefit pursuant to the order of precedence. *Id.* at 5.

¶3 The appellant appealed OPM's final decision to the Board and requested a hearing. IAF, Tab 1. The administrative judge informed the appellant of his burden to establish his entitlement to the decedent's lump sum death benefit by showing that he and his siblings were eligible to receive the benefit in accordance

with the statutory order of precedence. IAF, Tab 10 at 1-4. Specifically, the administrative judge informed the appellant that he must prove that the decedent did not have a biological son and that L.S. and C.S. were not the decedent's natural or adopted children. *Id.* at 4. The appellant responded that he was not aware that the decedent ever fathered any children and submitted additional affidavits from three of his siblings attesting that they were not aware that the decedent had any biological children. IAF, Tab 9 at 4, Tab 14 at 2‑4. At the telephonic hearing, the appellant testified that the decedent never conveyed to him, his siblings, or their mother that he had any biological children. IAF, Tab 16, Hearing Compact Disc (HCD). When the agency representative asked him why he initially told the OPM employee that the decedent had a biological son, the appellant responded that he had only heard a rumor that the decedent may have had a biological son and that he was "trying to do the right thing" by telling OPM about the possible son. *Id.* The appellant explained that the family searched Facebook and an online personnel system, but they were unable to find anyone who could be the decedent's son. *Id.* Thus, he testified that he believed that the decedent did not have any biological children. *Id.*

¶4    After the hearing, the administrative judge issued an initial decision finding that the appellant established that L.S. and C.S. were not the decedent's natural or adopted children under Arkansas law, but that the decedent may have a biological son. IAF, Tab 18, Initial Decision (ID). Due to this potential son, the administrative judge concluded that the appellant and his siblings were not entitled to the decedent's lump sum death benefit and affirmed OPM's final decision. ID at 6. The appellant has timely filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1.

¶5    Under FERS, a lump sum annuity benefit is paid to the individual or individuals surviving the employee and alive at the date title to the payment arises in the following order: (1) to the designated beneficiary or beneficiaries; (2) to the widow or widower of the employee; (3) to the child or children of the

employee and descendants of deceased children by representation; (4) to the parents of the employee or the survivor of them; (5) to the executor or administrator of the estate; and (6) to other next of kin of the employee as OPM determines to be entitled under the laws of the domicile of the employee at the date of his death. 5 U.S.C. § 8424(d). "For the purpose of this subsection, 'child' includes a natural child and an adopted child, but does not include a stepchild." *Id.* The intestate succession laws of Arkansas, the state in which the decedent was domiciled when he died, provide that siblings of an intestate decedent may be entitled to an inheritance from the decedent's estate if there is no surviving descendant, spouse, or parent. ARK. CODE ANN. § 28‑9‑214 (2016); IAF, Tab 6 at 11.

¶6      Here, the parties do not contend, nor is there any evidence to suggest, that the decedent designated a beneficiary prior to his death, that he had a surviving spouse or surviving parent at the time of his death, or that there was any executor or administrator of his estate. *E.g.*, IAF, Tabs 6, 14. Thus, pursuant to the order of precedence and the inheritance laws of Arkansas, the decedent's siblings are eligible to receive the lump sum death benefit if they can show that the decedent did not have any natural or adopted children. *See* 5 U.S.C. § 8424(d); ARK. CODE ANN. § 28‑9‑214 (2016). The appellant, as the applicant for benefits, has the burden to establish, by a preponderance of the evidence, that he is entitled to the benefits sought. *See* 5 C.F.R. § 1201.56(b)(2)(ii).

¶7      As noted above, the administrative judge found that the appellant established that the decedent did not legally adopt his stepdaughters, L.S. and C.S., under the laws of Arkansas and, therefore, that L.S. and C.S. do not take precedence over the appellant's entitlement to the lump sum death benefit. Neither party challenges this finding on review, and we discern no basis to disturb it. On review, however, the appellant argues that the administrative judge erred in finding that he and his siblings are not entitled to the lump sum death

benefit because the decedent may have a biological son. PFR File, Tab 1 at 4‑5. Specifically, he argues that the affidavits submitted below attesting that the decedent never presented or disclosed a biological son to any of the siblings or their late mother should be sufficient to establish the siblings' entitlement to the decedent's lump sum death benefit. *Id.* at 5; IAF, Tab 6 at 13, 15, 19, Tab 14 at 2-4. He further asserts that the Metropolitan Life Insurance Company (MetLife), which carried the decedent's Federal Employees' Group Life Insurance (FEGLI) policy, paid the decedent's siblings on December 1, 2015, after performing it's "due diligence" to locate an heir. PFR File, Tab 1 at 4; IAF, Tab 9 at 4.

¶8        In finding that the decedent may have had a biological son, the administrative judge relied primarily on the appellant's alleged statements during a March 24, 2015 telephone conversation with an OPM employee, as written by the OPM employee in the report of contact discussed above. ID at 6; IAF, Tab 6 at 25. Specifically, according to the OPM employee's report of contact, "[the appellant] stated that [the decedent] had a biological son but [the family does] not know where he is. They have tried to reach him, but they have been unsuccessful." IAF, Tab 6 at 25. In the initial decision, the administrative judge observed that "the appellant's initial statement to OPM that the decedent had a biological son is directly at odds with his later statements and testimony that [the decedent] had no biological children." ID at 6. The administrative judge noted that, when questioned regarding this disparity at the hearing, the appellant testified that, "because his brother never presented his family with a biological son, he concluded none existed." *Id*. The administrative judge thus concluded that, "[b]ased on the conflicting evidence," the appellant's initial statement to OPM was more credible than his subsequent testimony. *Id.* (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987)).

¶9        In *Hillen*, the Board held that, in resolving credibility issues, the trier of fact must identify the factual questions in dispute, summarize the evidence on

each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Thus, the Board may overturn demeanor‑based credibility determinations when the administrative judge's findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Rapp v. Office of Personnel Management*, 108 M.S.P.R. 674, ¶ 13 (2008).

¶10      Here, although the administrative judge cited *Hillen*, he did not articulate any basis for crediting the appellant's alleged statement to the OPM employee that the decedent had a biological son, over his subsequent statements, affidavits, and hearing testimony denying any knowledge of a son fathered by the decedent. ID at 6; *compare* IAF, Tab 6 at 25, *with id*. at 13, 15, 19, 21 *and* HCD. The administrative judge also did not mention or appear to consider the inconsistency of the appellant's alleged initial statement to OPM with other evidence—namely, the affidavits submitted by the appellant's siblings denying any knowledge of the existence of a biological son. ID at 6; IAF, Tab 14 at 2-4. Instead, the administrative judge noted that the appellant's initial statement to the OPM employee conflicted with his later statements and testimony and concluded that the appellant's initial statement that he was "aware the decedent had a biological son" was the more credible statement. ID at 6. Because the administrative

judge's credibility determination does not identify or discuss any factors relevant to a *Hillen* determination, it is incomplete and we need not defer to it. *See Rapp*, 108 M.S.P.R. 674, ¶ 13; *Hillen*, 35 M.S.P.R. at 458.

¶11      In addition, the administrative judge failed to properly weigh the testimonial and documentary evidence of record. For example, the administrative judge relied heavily on the report of contact written by the OPM employee, who did not testify at the hearing, to make his credibility determination. ID at 6; IAF, Tab 6 at 25. Although hearsay evidence is admissible in Board proceedings, assessment of the probative value of hearsay evidence necessarily depends on the circumstances of each case. *Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ¶ 16 (2011); *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-84 (1981). The Board generally evaluates the probative value of hearsay evidence by considering various factors that include the availability of persons with firsthand knowledge to testify at the hearing, whether the out-of-court statements were sworn, whether the declarants were disinterested witnesses to the events and whether their statements were routinely made, the consistency of the out-of-court statements with other statements and evidence, whether there is corroboration or contradiction in the record, and the credibility of the out-of-court declarant. *Adamsen*, 116 M.S.P.R. 331, ¶ 16. Here, however, the administrative judge failed to consider any of these factors in crediting the report's description of the appellant's alleged out-of-court statement. ID at 6.

¶12      We further note that the report of contact itself does not unambiguously reflect that the appellant stated that he "was aware" that the decedent had a biological son, as construed by the administrative judge. ID at 6; IAF, Tab 6 at 25. Specifically, although the report of contact notes that "[the appellant] stated that [the decedent] had a biological son," it also notes that a "possible child exists." IAF, Tab 6 at 25. The reference to a "possible child" appears to support the appellant's contention that he informed the OPM employee that he had *heard* that the decedent may have had a biological son, not that he *knew* of a biological

son.  *Id.*; HCD.  The administrative judge, however, did not consider this discrepancy in relying on or interpreting the report of contact.  ID at 6.

¶13     Additionally, we find that the administrative judge failed to accord the appropriate weight to the affidavits submitted by the appellant.  The Board has long held that an unrebutted affidavit or declaration under penalty of perjury may prove the facts it asserts.  *Adamsen*, 116 M.S.P.R. 331, ¶ 15; *see Schaefer v. U.S. Postal Service*, 42 M.S.P.R. 592, 595 (1989); *Woodall v. Federal Energy Regulatory Commission*, 30 M.S.P.R. 271, 273 (1986).  Here, the appellant submitted two affidavits to OPM attesting that the decedent "died without any progeny (children)" and that he "never presented any child or children to our late mother during her lifetime nor did he acknowledge or present any child or children to any of us during [his] lifetime.  Had [the decedent] fathered a child or children, he would have so introduced the child to our late mother during our late mother's lifetime."  IAF, Tab 6 at 13, 15, 19.  During the proceedings below, he submitted affidavits executed by each of his three siblings, which contain identical language to that set forth above from the appellant's affidavits, and additionally state that "no child or children presented him or herself to our late mother or to me to indicate that he or she was/is the child or children of [the decedent]."  IAF, Tab 14 at 2-4.  Each of these five affidavits is notarized and signed under penalty of perjury pursuant to 28 U.S.C. § 1746.  *Id.*; IAF, Tab 6 at 13, 15, 19.  The administrative judge, however, did not discuss or weigh these affidavits in deciding that the appellant's alleged initial statement to the OPM employee was the most credible statement.  ID at 6.

¶14     Lastly, it does not appear that the administrative judge appropriately considered or weighed the appellant's hearing testimony.  Generally, live testimony is more probative than an out-of-court statement.  *Social Security Administration v. Whittlesey*, 59 M.S.P.R. 684, 692 (1993), *aff'd*, 39 F.3d 1197 (Fed. Cir. 1994) (Table); *Dubiel v. U.S. Postal Service*, 54 M.S.P.R. 428, 432 (1992) (stating that the probative value of unsworn hearsay statements regarding

facts at issue is generally reduced when contradicted by live testimony regarding the same matter); *Robinson v. Department of Health & Human Services*, 39 M.S.P.R. 110, 115 (1988) (finding that hearsay evidence may not be sufficiently probative, in light of contradictory live testimony, to sustain an agency's burden by preponderant evidence). Notwithstanding the fact that the report of contact was written in the normal course of business, the administrative judge should have considered whether the appellant's live testimony, subject to cross examination, was more probative than the unsworn out-of-court statements written by the OPM employee, who did not testify at the hearing. *See, e.g.*, *Whittlesey*, 59 M.S.P.R. at 692. Additionally, the administrative judge should have considered the appellant's hearing testimony regarding his and his family's efforts to find the possible biological child. ID; HCD.

¶15     In light of the foregoing, we find that remand is necessary. On remand, the administrative judge should further develop the record regarding the appellant's belief that the decedent had a biological son and, in his discretion, hold a supplemental hearing to take additional testimony.[2] The administrative judge, moreover, should issue a show cause order directing the parties to submit evidence concerning the payment of life insurance benefits by the decedent's FEGLI policy and MetLife's efforts to determine the beneficiary or beneficiaries.[3] The administrative judge then should explore the issues identified above,

---

[2] In particular, the administrative judge should solicit evidence and testimony regarding: where and when the appellant and/or his siblings heard a "rumor" that the decedent had a biological son; what precisely the source or sources told the appellant and/or his siblings about the decedent's possible biological son; whether the source or sources of the information were credible; and the specific efforts taken by the family to locate the possible son.

[3] The appellant should specifically be directed to produce the claim form submitted to MetLife after the decedent's death and any letters or correspondence pertaining to payment of the life insurance benefit. Although the appellant bears the burden of proof in this case, OPM also should be specifically directed to produce any relevant information it may possess regarding the payment of life insurance benefits and efforts made to determine the beneficiary.

determine the appropriate weight that each type of evidence is due, and issue a new initial decision fully addressing all of the record evidence.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this remand order.


FOR THE BOARD:  _____
                Jennifer Everling
                Acting Clerk of the Board

Washington, D.C.